*582 OPINION OF THE COURT
Alexander, J.
The New York State Public Employment Relations Board (PERB) and the Adjunct Faculty Association of Nassau Community College (AFA) appeal, pursuant to leave granted by the Appellate Division, from a judgment of that court (with one Justice, dissenting in part) annulling a determination of PERB declaring that Nassau County[1] had engaged in an "improper employer practice” (see, Civil Service Law § 209-a [1] [e];[2] § 205 [5] [d]) by allegedly refusing to continue to abide by a term of an expired collective bargaining agreement between Nassau County and the AFA.
For the reasons that follow, we conclude that PERB’s interpretation of the expired collective bargaining agreement was irrational and therefore arbitrary and capricious (see, CPLR 7803 [3]). Accordingly, we affirm the judgment of the Appellate Division.
In 1982 the College and the AFA entered into a collective bargaining agreement that expired in 1984. Despite having completed impasse procedures, the parties have not reached a new agreement. In September 1985, the president of the College wrote the AFA’s president, advising "effective for the Spring 1986 semester adjunct [faculty] appointments and thereafter, the College will no longer honor the seniority provisions of your contract to the extent that they may require that adjunct course assignments] be made solely on the basis of seniority.” The president advised further, that the chair of each department would be directed to "make assignments on a basis consistent with academic and student needs and in the same manner as day-time faculty assignments.” Additionally, the president’s letter stated "[a]U faculty in the institution will be uniformly evaluated within each department consistent with sound academic policy.” The president sought to impose uniform standards on all faculty because he *583 feared the College might lose its accreditation in the absence of such uniformity, and thus jeopardize its ability to fulfill its statutory mandate to offer its students an academic program comparable to those in "institutions providing regular four-year courses” (Education Law § 6303 [3]).
The union responded to this letter by filing an improper employer practice charge with PERB based partially on allegations that the College’s threatened actions would violate Civil Service Law § 209-a (1) (e) by refusing to continue a term of the expired agreement which requires the assignment of courses to adjunct faculty members be made solely on the basis of seniority. The charges were dismissed by the PERB Administrative Law Judge (AU) on February 24, 1986 after a hearing, upon finding, inter alia, that the agreement’s provisions concerning "eligibility and qualifications” take precedence over the seniority provisions and that the College’s "right to determine qualifications is unrestricted.” The ALJ observed that in a prior proceeding commenced by the College questioning whether the seniority provisions of the parties’ agreement were mandatorily negotiable, it had been determined that the seniority provisions of the agreement did not require that course assignments be made solely on the basis of seniority. The ALJ concluded that the College’s declared intention to assign courses based on criteria in addition to seniority could not be considered violative of Civil Service Law § 209-a (1) (e). On appeal, PERB affirmed the ALJ’s decision in a determination dated June 5, 1986.
Meanwhile, as the president’s September letter indicated would be done, in November 1985, the College directed each department chairperson to prepare lists designating which adjunct faculty members were qualified to teach the courses offered in the spring of 1986 under stated qualifications. Very few of the approximately 800 adjunct faculty members were disqualified from teaching any course. Several of those who were disqualified were reinstated after instituting grievance procedures as outlined in the agreement.
The improper employer practice charge at issue here was filed by the AFA on January 27, 1986. The charge alleges that the College failed to comply with the terms of the expired agreement by declaring certain senior adjunct faculty members unqualified to teach any available course. The charge asserted that the adjunct faculty members now declared "unqualified” "had been deemed to be qualified many years ago *584 [and] [n]o discussions over changing the qualifications to teach were conducted.” The AFA charged that the College violated Civil Service Law § 209-a (1) (e) by unilaterally implementing new qualifications for employment in violation of section 10.1 (e)[3] of the collective bargaining agreement.
After a hearing, the PERB Administrative Law Judge dismissed this charge in a decision dated December 19, 1986. The union sought PERB review of the ALJ’s decision contending that the ALJ "erred in failing to find that in the past the employer has deemed an adjunct professor who had successfully taught a course once as qualified to teach that course in the future.” The AFA also argued that once an adjunct faculty member had completed the one-semester probationary period,[4] he or she was qualified to teach in the corresponding department. PERB reversed the ALJ’s decision (20 PERB [f 3036) and ordered the petitioner, inter alia, (1) "[forthwith [to] rescind its determinations that adjunct faculty members who had previously been placed on the seniority list are no longer academically qualified” and (2) to comply with section 10.1 (e) of the agreement.
PERB concluded that the contract provisions concerning seniority, when considered in conjunction with the provisions relating to probation, created a "kind of tenure” for adjunct faculty members, notwithstanding that they are employed under separate semester-long contracts and do not have "continuing employment.” Further, PERB determined that by virtue of having been found qualified when first hired and having satisfactorily completed one semester of teaching a course, an adjunct faculty member acquires the right to be placed on the seniority list and to teach that course whenever it is offered by the department in the future. PERB also found that section 10.1 (e) "precludes the college from unilaterally *585 determining that adjunct faculty members who had been considered academically qualified were no longer academically qualified solely on the basis of newly-imposed standards of academic qualification.”
The College commenced this article 78 proceeding challenging the PERB determination as being affected by error of law, arbitrary and capricious and not supported by substantial evidence. Supreme Court transferred the proceeding to the Appellate Division pursuant to CPLR 7804 (g). The Appellate Division granted the petition, annulled PERB’s determination and dismissed the improper employer practice charge (151 AD2d 168). The court concluded that the AFA’s claims were barred by res judicata and that PERB’s finding of an improper employer practice, premised on an alleged violation of the expired collective bargaining agreement, was based on a misinterpretation of that agreement. One Justice dissented in part and concurred in part, agreeing with the majority that the AFA’s claims were barred by res judicata insofar as they sought to prevent the College from imposing new standards of academic qualification, but disagreeing that res judicata also barred the AFA’s contention that the College failed to update the departmental lists "in concert” with the AFA as required by section 10.1 (e). As indicated, the Appellate Division granted PERB and the AFA leave to appeal to this Court.
PERB argues that because of its expertise in interpreting the Taylor Law (Civil Service Law § 200 et seq.) the courts should defer to its determination of improper practice charges based upon its interpretation of collective bargaining agreements. Where an administrative agency’s interpretation "is without sound basis in reason, and in disregard of the terms of the contract” (Matter of Century Operating Corp. v Popolizio, 60 NY2d 483, 488), a determination based upon such an interpretation will be set aside.
Such is the case here, where PERB concluded that section 10.1 (e) of the expired collective bargaining agreement, in conjunction with other provisions of the agreement, created a type of "tenure”, such that an adjunct faculty member who has once taught a course successfully, i.e., having satisfied the probationary period of section 18.1 (see, n 4, supra) is forever "qualified” to teach that course. PERB ruled therefore that the College was precluded from thereafter "unilaterally determining that adjunct faculty members who had previously been considered academically qualified were no longer aca *586 demically qualified solely on the basis of newly-imposed standards of academic qualification”.
This interpretation is unsupported by the actual text of the collective bargaining agreement. No provision of the agreement provides that any member of the adjunct faculty is vested with such "tenure.” Section 10.1 (e) does not so provide; it simply requires the College and the AFA to maintain a list of qualified adjunct faculty members and does not as PERB found, "bindO the college to its earlier decisions regarding academic qualifications”.
Indeed any such provision in a collective bargaining agreement divesting the College of its power to set academic qualification would be of questionable validity.
PERB argues finally that the Appellate Division erred in applying principles of res judicata to its determination in the instant proceeding, contending that the issue concerning qualifications determined here was not raised or considered in the prior proceeding and that in any event that doctrine should not apply to PERB’s interpretation of the Taylor Law. We need not decide this issue however, since our decision is based on the conclusion that PERB’s interpretation of section 10.1 (e) of the parties’ collective bargaining agreement is irrational. Accordingly, the judgment of the Appellate Division annulling the PERB determination and dismissing the improper employer practice charge should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Judgment affirmed, with costs.

. Nassau County is the sponsor of Nassau County Community College, an institution administered by a Board of Trustees (see, Education Law § 6301 et seq.) and is a signatory on the collective bargaining agreement, and the petitioner herein. For ease of reference however, the Nassau County Community College (the College) will be referred to throughout as the party in interest.

. Civil Service Law § 209-a (1) (e) provides, in part: "It shall be an improper practice for a public employer or its agents deliberately * * * to refuse to continue all the terms of an expired agreement until a new agreement is negotiated”.

. Section 10.1 (e) states: "Each adjunct department will maintain a list of couses [sic] for which each adjunct faculty member is academically qualified!.] This list will be prepared and updated annually by the department!'^ adjunct supervising administrator in concert with the Adjunct Faculty Association.”

. Section 18.1 (Probation) states, in part: "All adjunct faculty whose first employment at Nassau Community College begins after August 31, 1976 will be on probation for one (1) semester. During this period a probationary instructor’s employment may be terminated by the Dean of Instruction in the event of unsatisfactory observations on two distinct occasions. Such observations may be made by the Dean of Instruction or his designated representatives. Such observations shall be reported in writing with a copy given to the subject instructor.”